UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JESUS C. HERNANDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 1:22-CV-070 |
| | § | |
| DOLLAR GENERAL CORPORATION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## **ORDER AND OPINION**

After Plaintiff Jesus C. Hernandez slipped and fell in the detergent aisle of Defendant Dolgencorp of Texas, Inc.'s premises, he filed this action alleging a cause of action for premises liability.[1] The parties conducted discovery, and Dolgencorp now moves for summary judgment. (MSJ, Doc. 19) Finding that a fact issue exists as to actual knowledge of the premises defect, the Court finds that this matter must be tried to a jury.

**I.    Summary Judgment Facts and Procedural Background[2]**

On October 10, 2020, Hernandez arrived at the Dollar General Store, which Dolgencorp owns, in Harlingen, Texas. Once inside, he headed towards the detergent aisle to buy cleaning products. He took a few steps down the aisle and suddenly "slipped and fell backwards". (Hernandez Dep., Doc. 27-1, 43; Video, Exh. 27-13, 37:07) He hit his head on the shelf and could not move or get up. (Hernandez Dep., Doc. 27-1, 43)

The Dolgencorp surveillance video shows the detergent aisle for about 37 minutes before Hernandez's fall. The video depicts several customers walking through the aisle, some of whom passed directly over the area where Hernandez slipped. The video also shows store manager, Rosalba Nava, a woman in a black uniform, walk through the aisle four times before Hernandez's fall. (Video, Exh. 27-13, 09:15–09:23; 11:32–12:47; 14:11–14:19; 14:47–15:37) On her fourth trip

---

[1] Dolgencorp of Texas, Inc. is the correct name of the defendant.
[2] The Court summarizes the relevant evidence that each party submitted, but "resolve[s] factual controversies in favor of the nonmoving party". *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

through the aisle, she walks directly over the spot where Hernandez later slips. After crossing that area, she stops near the other end of the aisle and faces the shelves. She removes her left shoe, and examines the sole, appearing to rub it. She then puts the shoe back on and continues to assist two customers who have entered the aisle. (Video, Exh. 27-13, 14:47–15:37)

About 22 minutes later, the video shows Hernandez enter the detergent aisle at the far end from the position of the camera. Hernandez testified at his deposition that he did not notice any substance on the floor. (Hernandez Dep. 27-1, 44–45) The video depicts him walking down the aisle for a few steps, and then slipping and falling. (Video, Exh. 27-13, 37:08)

After his fall, Hernandez called for help. (Hernandez, Dep., Doc. 27-1, 43–44) The video shows two customers coming to his aid fairly quickly. (Video, Exh. 27-13, 37:25) While one customer stays with Hernandez, the other customer leaves and returns with Nava, the employee who had previously been in the aisle. (*Id.* at 37:36–37:57) Nava recalled that she was at the front of the store when a customer called for help. (Nava Dep., Doc. 27-3, 56) They immediately headed to the detergent aisle, where Nava saw Hernandez on the floor. (*Id.* at 60)

The video depicts Nava and a customer near Hernandez, speaking to him and to each other.[3] (Video, Exh. 27-13, 37:58–38:32; *see also* Hernandez Dep., Doc. 27-1, 45–46; Nava Dep., Doc. 27-3, 70–72) Hernandez confirmed that a Dolgencorp employee came to his aid. (Hernandez Dep., Doc. 27-1, 45–46) He testified that while he remained on the floor, the employee told a customer or a co-worker that "a shopper had detergent that was leaking. A container with detergent, liquid detergent that was leaking."[4] (*Id.*)

Nava testified that she and the customer who informed her about Hernandez's fall attempted to help him stand up, but were unable to do so. (Nava Dep., Doc. 27-3, 60) Over the next few minutes, Nava left the area twice, returning first with Assistant Manager Jacob Ortiz,

---

[3] The video does not contain audio.
[4] Dolgencorp objects to this statement as hearsay. (Reply, Doc. 31, 2–3) The Court overrules the objection, as Hernandez identified the speaker as an employee, and the video shows Nava providing him aid and remaining near him for some time. *See* FED. R. EVID. 801(d)(2) (rendering as not hearsay a statement "made by the party's . . . employee on a matter within the scope of that relationship and while it existed").

and then with a chair. (*Id.* at 62–63; Video, Exh. 27-13, 39:02) Ortiz helped Hernandez stand up, while Nava retrieved paper towels and cleaned the floor near Hernandez. (Video, Exh. 27-13, 39:10–40:07) She recalled that she saw "some drops" of detergent to the side of where Hernandez fell. (Nava Dep., 27-3, 74; *see also id.* at 77 (describing "tiny drops" in the aisle))

Ortiz then waited with Hernandez until the paramedics arrived. (Video, Exh. 27-13, 40:25–48:54)

In May 2022, Hernandez filed this lawsuit in a Texas state court, and Dolgencorp timely removed the matter to this Court. (*See* Orig. Pet., Doc. 1-1; Notice of Removal, Doc. 1)

In January 2023, Dolgencorp moved for summary judgment. (MSJ, Doc. 19) Hernandez filed his Response (Doc. 27), presenting his substantive argument in opposition to Dolgencorp's Motion, but also requesting that the Court defer consideration of the Motion because he needed additional information about whether additional video footage existed from the date of the incident. Dolgencorp filed a Reply, attaching affidavits from three individuals—Lisa White, Ernesto Vasquez, and Tina Perkins—who offer statements regarding Dolgencorp's video retention policies and the available video footage from the date of the incident. (Reply, Doc. 31)

Hernandez filed a Sur-Reply, which Dolgencorp moved to strike. (Sur-Reply, Doc. 33; Motion to Strike, Doc. 34) The Court granted in part and denied in part Dolgencorp's motion. (Order, Doc. 35) In its Order, the Court indicated that when ruling on Dolgencorp's Motion for Summary Judgment, it would consider Hernandez's objections to the affidavits that Dolgencorp submitted with its Reply, as well as his response to Dolgencorp's objections to Hernandez's summary judgment evidence. However, the Court also indicated it would disregard any other argument that Hernandez presented in his Sur-Reply. The Court also allowed Dolgencorp to file a response to Hernandez's objections to the affidavits. Dolgencorp did so. (Response to Plaintiff's Objections to Evidence, Doc. 36)

Hernandez devotes considerable attention to whether Dolgencorp should have retained and produced additional video footage from the detergent aisle. And he objects to the affidavits

that Dolgencorp submitted on this issue, based on the qualifications of the affiants and the sufficiency of their statements. Based on the record and the applicable law, the Court overrules Hernandez's objections and finds that each affiant has the requisite background and personal knowledge to support the offered statements. In addition, to the extent that Hernandez requests an adverse inference from the absence of additional video footage, the Court declines to apply one. Courts draw such an adverse inference against "a party who intentionally destroys important evidence in bad faith". *Whitt v. Stephens Cnty.*, 529 F.3d 278, 284 (5th Cir. 2008). Courts must find "that the party acted with the intent to deprive another party of the information's use in the litigation." *Eagan v. Walgreen Co.*, No. 21-20352, 2022 WL 683636, at *3 (5th Cir. Mar. 8, 2022) (per curiam). In the present matter, the Court finds that no evidence indicates that Dolgencorp intentionally destroyed video footage after its receipt of a letter of representation from Hernandez's counsel, much less did so to prevent Hernandez from viewing such video footage. As a result, the Court does not apply an adverse inference due to spoliation, and finds that whether additional video footage should be available for the date in question does not bear on the issues in this case.

## II. Standard of Review

"Summary Judgment is appropriate when the pleadings, affidavits, and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden is on the moving party to identify "those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf*, 485 F.3d at 261. If the moving party makes this showing, the burden shifts to the nonmoving party, which "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### III.  Analysis

To establish premises liability in Texas, a plaintiff must show "(1) that [the defendant] had actual or constructive knowledge of some condition on the premises; (2) that the condition posed an unreasonable risk of harm to [the plaintiff]; (3) that [the defendant] did not exercise reasonable care to reduce or to eliminate the risk; and (4) that [the defendant's] failure to use such care proximately caused [the plaintiff's] personal injuries." *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983).

In its Motion, Dolgencorp challenges only the first element, contending that the Court should grant summary judgment in its favor because Hernandez cannot establish actual or constructive knowledge. (MSJ, Doc. 19, 2–3)

A plaintiff may establish actual or constructive knowledge of a condition by showing that "(1) the defendant placed the substance on the floor, (2) the defendant actually knew that the substance was on the floor, or (3) it is more likely than not that the conditions existed long enough to give the premises owner a reasonable opportunity to discover it." *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002). In his Response, Hernandez relies on the second and third options, meaning that to survive summary judgment, he must submit competent summary judgment evidence to create a fact issue as to whether Dolgencorp actually knew the substance was on the floor before Hernandez slipped, or whether the substance had been present on the floor long enough to give Dolgencorp a reasonable opportunity to discover it.

#### A.  Actual Knowledge

"Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident". *City of Corsicana v. Stewart*, 249 S.W.3d 412, 414–15 (Tex. 2008).

"Circumstantial evidence establishes actual knowledge only when it 'either directly or by reasonable inference' supports that conclusion." *Id.* at 415 (quoting *State v. Gonzalez*, 82 S.W.3d 322, 330 (Tex. 2002)).

Based on the summary judgment record, the Court concludes that some evidence supports Hernandez's position that before he fell, a Dolgencorp employee had actual knowledge of the liquid in the aisle, and that this evidence suffices to create a genuine issue of material fact on the matter. The video shows the store manager, Rosalba Nava, walk through the detergent aisle several times before Hernandez slipped. On her fourth time through the aisle, she walks directly over the spot where he later falls. While she does not appear to slip, within a few yards of crossing that area, she removes her left shoe and then examines the sole, appearing to rub it with her fingers. She then puts the shoe back on and continues to assist customers. Nava's actions represent some evidence that she knew that some substance existed on the floor. Her removal and examination of a shoe represents an unusual act. People typically do not remove a shoe and examine its sole without a specific reason. Nava was not questioned during her deposition about her removal and examination of her shoe, but the jury could infer that she did so because she felt something abnormal when walking through the aisle. And she did so immediately after crossing the precise area where Hernandez slips about twenty minutes later. A reasonable jury could infer that Nava either felt a slippery substance on the floor or saw liquid on the sole when she examined it. In addition, based on Nava appearing to rub the sole with her fingers, the jury could reasonably infer that she saw liquid or another substance on the shoe. In either event, she would have actual knowledge of a dangerous condition in the area where Hernandez slipped, about twenty minutes before his fall.

In addition, Hernandez's recollection of Nava's alleged comment provides additional support for his position. He testified that shortly after his fall, he overheard Nava tell a customer that a shopper had "a container with detergent, liquid detergent that was leaking." (Hernandez Dep., Doc 27-1, 45–46) By itself, Nava's alleged statement would not create a fact issue on actual

knowledge, as the statement does not identify the location of the shopper with the allegedly leaking detergent container.[5]  In the present case, however, Hernandez could present both the video and the alleged statement to the jury, which could infer that Nava may have been particularly alert for slippery areas in the store because of her knowledge of the leaking container, and in that moment of heightened awareness, she felt something amiss in the aisle as she walked directly over the area where Hernandez later falls.

### B. Constructive Knowledge

Under Texas law, "constructive knowledge can be established by showing that the condition had existed long enough for the owner or occupier to have discovered it upon reasonable inspection."  *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 102–03 (Tex. 2000).  The Supreme Court of Texas instructs that "[w]ithout some temporal evidence, there is no basis upon which the factfinder can reasonably assess the opportunity the premises owner had to discover the dangerous condition."  *Reece*, 81 S.W.3d at 816.  But ultimately, "[w]hat constitutes a reasonable time for a premises owner to discover a dangerous condition will, of course, vary depending upon the facts and circumstances presented."  *Id.*  When considering the issue of constructive knowledge, Texas courts consider "the combination of proximity, conspicuity, and longevity".  *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 567–68 (Tex. 2006) (citing *Reece*, 81 S.W.3d at 816).  No factor is dispositive.

Here, Hernandez argues that even if Dolgencorp lacked actual knowledge of a dangerous condition, Dolgencorp had constructive knowledge.  Based on the summary judgment record and the applicable law, however, the Court concludes that no competent summary judgment evidence

---

[5] The law requires that premises owners have actual knowledge of a specific dangerous condition, and not simply of a possible dangerous condition somewhere on the premises.  *See, e.g.*, *Gregg v. Walgreen Co.*, 625 S.W.3d 636, 646 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (explaining that "evidence that there was a wet floor sign by the entrance does not raise a genuine issue as to whether Walgreens had actual knowledge that water was on the floor inside the store in the area where Gregg fell"); *Coward v. H.E.B. Inc.*, No. 01-13-00773-CV, 2014 WL 3512800, at *4 (Tex. App.—Houston [1st Dist.] July 15, 2014, no pet.) (explaining that evidence showing that a store manager "knew that it was raining, that the store roof had prior leaks when it rained, and that she was looking for leaks when [appellant] fell . . . does not demonstrate that HEB actually knew that there was a dangerous condition on the aisle where [appellant] fell").  In the present case, Hernandez did not hear Nava say that the shopper with the leaky detergent container had been in the aisle where he fell.

creates a fact issue as to whether the liquid had been present on the floor long enough to give Dolgencorp a reasonable opportunity to discover it.

As for conspicuity, the only summary judgment evidence on the matter indicates that the liquid on the floor represented a particularly inconspicuous hazard. Nava, who cleaned up the liquid after Hernandez's fall, described it as "some drops", "tiny drops", and "little drops [that] were very tiny." (Nava Dep., Doc. 27-3, 74, 77–78) She noted that "[y]ou could barely see them", and described them as "not visible" and "not that visible". (*Id*. at 78–80) The Customer Incident Report only contains the description, "Dish liquid Drops". (Customer Incident Report, Doc. 27-6, 1) No other individual provided a description of the liquid, and Hernandez testified that he did not see the hazard. Hernandez points to no evidence controverting Nava's descriptions of the liquid, and the video supports her recollection. Multiple people walk directly over and to the side of the location where Hernandez later slips. None of these individuals appears to slip, attempts to avoid a hazard, or looks down at the floor when passing that area. After Hernandez's fall, when Nava cleans the area, she uses a small handful of what appear to be paper towels and completes the clean up relatively quickly. Overall, the summary judgment evidence supports only the conclusion that the hazard was comprised of a few drops of a colorless liquid. As a result, the factor of conspicuity weighs against constructive knowledge.

With respect to proximity, the video shows that Nava, a Dolgencorp employee, was present in the detergent aisle on four separate occasions within half an hour before Hernandez's fall. (Video, Exh. 27-13, 9:15–9:23 (28 minutes before fall), 11:32–12:47 (26 minutes), 14:11–14:19 (23 minutes), and 14:47–15:37 (22 minutes)) During these trips, she walks directly over or to the side of where Hernandez slipped. Nava's proximity to the hazard weighs in favor of constructive knowledge. To the extent that liquid existed on the floor throughout the video, Nava had the opportunity to see it.

Finally, as to longevity, no summary judgment evidence provides dispositive proof of when the liquid came to be on the floor. It is uncontroverted that the liquid existed at the time of the

fall. As the video does not show the moment when the hazard arose, the jury could infer that the liquid existed on the floor throughout the video—i.e., for 37 minutes before the fall. As a result, the video represents some evidence that the liquid remained on the floor for 37 minutes before Hernandez slipped.

Dolgencorp argues that the liquid detergent "could only have been there for a brief period of time" because the video shows several customers walk through the detergent aisle without reacting to any liquid detergent on the floor. (Reply, Doc. 31, 6)  And it directs the Court to evidence that "seems to indicate the spill most likely occurred less than six minutes before" Hernanez's fall. (MSJ, Doc. 19, 6)  But even if that particular evidence leads to that conclusion, on summary judgment, courts resolve all factual disputes in favor of the non-movant. And a reasonable jury could also infer from the video that the liquid remained on the floor throughout the 37 minutes of footage before Hernandez slipped. The fact that other individuals walk over the same area without appearing to notice or react to liquid on the floor bears direct relevance to the factor of conspicuity, but less relevance to the factor of longevity.

Considering the totality of the summary judgment evidence, and viewing it in the light most favorable to Hernandez, the Court concludes that Dolgencorp did not have a reasonable opportunity to discover the hazard, even assuming that it existed on the floor for the full 37 minutes of the video. The evidence supports only the conclusion that the hazard was significantly inconspicuous, representing only some drops of a colorless liquid. The numerous individuals who walk directly over the area where Hernandez fell, but do not slip, appear to notice, or otherwise react to anything on the floor can indicate only that either the liquid was not on the floor until very close in time to Hernandez's fall—in which case Dolgencorp would not have had an opportunity to discovery the hazard—or that the hazard was effectively not visible. In either event,

Dolgencorp would be entitled to summary judgment as to a cause of action for premises liability based on constructive knowledge.[6]

Although the Court has not identified a fully analogous authority, other courts have reached similar conclusions when the summary judgment record supported, at best, that the hazard had remained on the floor about half an hour before a fall. *See, e.g.*, *Garcia v. Ross Stores, Inc.*, 896 F. Supp. 2d 575 (S.D. Tex. 2012) (granting summary judgment despite evidence demonstrating that a coat hanger remained on the floor for at least 30 minutes before the plaintiff's fall). While some courts have denied summary judgment in slip-and-fall cases when the evidence showed that the hazard had remained on the floor for 40 minutes or less, those decisions have typically concerned conspicuous hazards. For example, in one case, the court denied summary judgment when the video showed a customer "deliberately go around something" at the location of the fall, about 40 minutes before the incident, and an employee purported to inspect that same area 20 minutes before the fall. *Martinez v. Target Corp.*, No. CV H-20-3481, 2021 WL 3813361 (S.D. Tex. Aug. 26, 2021). Another matter concerned "a lot of water" in an aisle for at least 30 minutes before the fall. *Herrera v. Sam's E., Inc.*, No. 7:19-CV-347, 2021 WL 1429522 (S.D. Tex. Mar. 8, 2021) (describing the spill as "a lagoon"). And in a recent case, a court denied summary judgment when a conspicuous "yellow glittery substance" remained "on a grey floor" for 20 to 30 minutes before the plaintiff's fall. *Villanueva v. Wal-Mart Stores Texas, LLC*, No. 5:21-CV-35, 2023 WL 2493841 (S.D. Tex. Jan. 31, 2023). These non-binding cases suggest only that a premises owner has a reasonable opportunity to discover a *conspicuous* hazard within 25 to 40 minutes of the hazard arising. *But see Patel v. Walmart Stores, Inc.*, No. 4:15-CV-427, 2016 WL 4161820 (E.D. Tex. Aug. 5, 2016) (denying motion for

---

[6] The Court notes that Nava's removal and examination of the sole of her shoe, about 22 minutes before Hernandez fell, represents no evidence as to constructive knowledge. If Nava saw liquid on her shoe or examined it because she felt something slippery as she walked the aisle, those facts would support actual knowledge. But her examination of her shoe would not bear relevance as to longevity (i.e., whether the liquid had been on the floor for longer than 37 minutes) or conspicuity (i.e., whether the liquid was more conspicuous than some colorless drops). And the summary judgment record already demonstrates that she walked directly over the area of the fall at least four times in the half hour before the incident. As a result, her examination of her shoe adds little weight to the proximity factor.

summary judgment based on evidence that an inconspicuous spill remained on the floor for 24 minutes before the plaintiff's fall).

### IV. Conclusion

For the reasons explained in this Order and Opinion, it is:

**ORDERED** that Defendant's Motion for Summary Judgment (Doc. 19) is **GRANTED IN PART AND DENIED IN PART**; and

**ORDERED** that Plaintiff Jesus C. Hernandez's cause of action for premises liability based on constructive notice is **DISMISSED WITH PREJUDICE**.

All other relief not expressly granted is denied.

Signed on July 25, 2023.

_____
Fernando Rodriguez, Jr.
United States District Judge